IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| PAUL BERNARD COLEMAN, Reg # 10679-067 | | PETITIONER |
| v. | 2:22-cv-00064-BSM-JJV | |
| JOHN P. YATES, Warden, FCI – Forrest City Low | | RESPONDENT |

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

### DISPOSITION

**I.   BACKGROUND**

Petitioner Paul Bernard Coleman, an inmate at Forrest City Low Federal Correctional Institution, brings this 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus *pro se*. (Doc. No. 1). He challenges a prison disciplinary he received, claiming: (1) the contraband was found in a common area; therefore, he never had "constructive possession" or "control" over the contraband; (2) violation of due process laid out in policy statement 5270.09; (3) lack of evidence to support

the contraband belonged to him; and (4) the "some evidence" standard was not met. (Doc. No. 1 at 6-8). Mr. Coleman requests the disciplinary by completely removed from his record and his lost good conduct time credits be restored. *Id.* at 8. Respondent counters that the Court does not have authority to award good conduct time credits and should deny the petition; and, alternatively, Mr. Coleman has not exhausted administrative remedies and all his claims are meritless. (Doc. No. 10 at 3-9). After careful consideration of the Petition (Doc. No. 1) and Response (Doc. No. 10), I find the Petition must be dismissed with prejudice.

**II.     FACTS**

Timothy Rice, Disciplinary Hearing Officer for the BOP at the Federal Correctional Complex in Butner, North Carolina, submitted a Declaration detailing the circumstances of the disciplinary and Disciplinary Hearing Officer determination. (Doc. No. 10-11). He states:

> On March 26, 2021, at approximately 6:20 a.m., the Special Investigative Services (SIS) Department conducted a targeted search of Cadre B, Cell W05-211 after receiving information from an informant that Inmate Coleman was in possession of a significant amount of synthetic cannabinoid. Cell W05-211 was solely occupied by Inmate Paul Bernard Coleman. During the search, SIS staff recovered a cut envelope from behind a wall outlet cover containing thirteen pieces of paper measuring approximately 3.5 by 2.5 inches in length. The envelope and papers were photographed, secured, and transported to the SIS office, where they were entered into evidence as Item BUH-21-0035. *Attachment 2, Discipline Hearing Officer (DHO) Report, Incident Report No. 3499122.*
>
> Senior Officer C. Nkire wrote a memorandum following the search, stating: on March 26, 2021, at approximately 6:05, while working as the unit officer in Cadre B, this officer along with the SIS Office, conducted a cell search of Cell W05-211, occupied by inmate Coleman, Paul, Reg. No. 10679-067, according to SENTRY. Upon conducting the search, several pieces of folded paper suspected to be K2 w[ere] recovered inside a blue Noxema containe[r] located in the locker closest to the window, as well as inside the electrical outlet behind the same locker.

*Id.* at 2.

The Incident Report delivered to Mr. Coleman further elaborated on the circumstances before and after the search. (Doc. No. 1 at 10). In the Description of Incident, SIS Technician

T. Conyers stated:

> On March 9, 2021, the SIS Department received information from CI# 649331 that Inmate Coleman, Paul, Reg. No. 10679-067, was in possession of a significant amount of K2 (Synthetic Cannabinoid). CI# 649331 stated Coleman had inmates constantly visit his cell (W05-211) in Cadre B, waking him up early in the morning and late at night to "score" K2. CI# 649331 stated multiple inmates on the unit were "strung out" on whatever it was he was selling and several inmates owed him money for the substance he was selling. CI# 649331 has provided credible information to the SIS Office on previous cases resulting in the investigation being initiated.
>
> On March 26, 2021, at approximately 6:20 a.m. the SIS Department conducted a targeted search of Cadre B Cell W05-211 based on information received from CI# 649311. A PP30 SENTRY Roster indicates cell W05-211 is solely occupied by inmate Coleman. During the search SIS Staff recovered a cut envelope containing thirteen (13) pieces of paper measuring approximately 3.5 by 2.25 inches in length hidden behind a wall outlet cover. The recovered contraband was photographed, secured, transported to the SIS Office and entered into evidence (Item BH-21-0035). On April 6, 2021 at 1:16 p.m., SIS Staff submitted the recovered contraband to the North Carolina State Crime Laboratory (NCSCL) for chemical analysis (Examination for controlled substances).
>
> On April 29, 2021, at 2:31 p.m. the SIS Department received a Laboratory Report from the NCSCL on item BUH-21-0035. The results of the examination were[:] One piece of paper was analyzed and found to contain: MDMB-4en-PINACA. An indazole carboxamide – Schedule I Synthetic Cannabinoid in North Carolina. 4F-MDMB-BUTINACA, an indazole carboxamide – Schedule I Synthetic Cannabinoid. 4F-MDMB-BUTINACA (aka 4F-MDMB-BINACA) is a positional isomer of 5F-AMB, which is a Federal Schedule I controlled substance, and therefore 4F-MDMB-BUTINACA (aka 4F-MDMB-BINACA) is a Federal Schedule I controlled substance. 5-fluoro MDMB-PICA, an indole carboxamide – Schedule I Synthetic Cannabinoid in North Carolina, and a Federal Schedule I controlled substance Net weight of material - 0.48 (+/- 0.06) gram(s). This is a re-write.

*Id.*

Mr. Coleman was charged with Possessing Drugs/Alcohol. (Doc. No. 1 at 10). He received the Notice of Charges on July 23, 2021, at 11:25 a.m. *Id.* at 11. There was a delay in process, described in the DHO report as a "rewrite, additional information and administrative errors." *Id.* The disciplinary hearing was held on September 7, 2021. (Doc. Nos. 1 at 11; 10-

3

11 at 3). The following is the summary of Mr. Coleman's statement:

> The DHO first ensured the inmate had received a copy of the incident report, understood his rights, had no documentary evidence to present, and did not request video evidence be reviewed. Inmate Coleman waived his previously requested staff representative and witness prior to the DHO hearing. Signature attached. The incident report was delivered past the ordinary 24 hour time frame and the Unit Discipline Committee hearing was delayed, due to rewrites for additional information and to correct administrative errors. Authorization was received from the Warden to continue with the disciplinary process. The DHO determined these delays and corrections did not impact inmate Coleman's right to due process, right to a fair hearing, or his ability to defend himself. The DHO then read aloud Section 11 of the incident report and asked inmate Coleman if it was true. Inmate Coleman denied the charge, stating "I deny the charge. I don't know how the drugs got into the wall socket, but none of it belongs to me."

(Doc. No. 1 at 11-12).

After the hearing, the hearing officer found Mr. Coleman guilty of the charge. *Id.* at 13. Mr. Coleman was given the following sanctions: (1) disallowance of forty-one days of Good Conduct Time; (2) Disciplinary Segregation for 45 days; and (3) loss of commissary privileges for six months. (Doc. Nos. 10 at 9; 10-11 at 4). Mr. Coleman claims he administratively appealed to the Mid-Atlantic region and was denied because "the required disciplinary procedures were substantially followed, the evidence supports the DHO's finding, and the sanctions were appropriate for the offense." (Doc. No. 1 at 15-16). He provides the Regional Administrative Remedy Appeal Response for Remedy ID NO.: 1100396-R1, signed by J.C. Petrucci, Regional Director of the Mid-Atlantic Region. *Id.* The Response advises Mr. Coleman that he can appeal to the General Counsel located in Washington, D.C. within 30 days of the date of the response, dated December 3, 2021. *Id.* at 16. Mr. Coleman claims he then appealed to the address provided on January 15, 2022, and was denied. *Id.* at 3, 17. He provided the "Central Office Administrative Remedy Appeal" he mailed in. *Id.* at 17. The appeal does not show where it was sent, but only that it was received on February 22, 2022, and labeled Case No. 1111625-R1. *Id.*

4

Respondent describes the appeal process slightly different. (Doc. No. 10 at 6). Respondent claims Mr. Coleman administratively appealed "to the region" and was denied. *Id.* He cites Mr. Rice's supporting declaration (Doc. Nos. 10-11 at 4), and attached Administrative Remedy Generalized Retrieval ("the Retrieval"). (Doc. No. 10-14 at 3). The Retrieval shows Remedy ID: 1100396-R1 was received on November 4, 2021, and denied on December 3, 2021. *Id.* Respondent claims Mr. Coleman "then untimely appealed to the Mid-Atlantic region while housed at FCC Forrest City, in the South-Central Region. [] He was denied and instructed to appeal to the proper region. [] Coleman never corrected this error and has not appealed to the correct region." (Doc. Nos. 10 at 6). The Retrieval shows Remedy ID: 1111625-R1 was received on February 22, 2022, and rejected on February 26, 2022. (Doc. No. 10-14 at 3). The remarks section states, "[p]lease submit in the region in which you are housed." *Id.* There is no evidence any further appeals.

### III.   ANALYSIS

Mr. Coleman makes multiple claims. First, he never had "constructive possession" or "control" over the contraband, stating the contraband was instead found in a common area because it is a dorm setting. (Doc. No. 1 at 6). He elaborates, claiming, "[o]n March 26, 2021[,] SIS recovered what is believed to [be] contraband from behind a wall outlet in a cubicle I was assigned to. There is no way of telling how long this material was in this wall outlet, there is no information submitted indicating I have the tools to open this wall outlet." *Id.* at 7. He next alleges a violation of due process as laid out in policy statement 5270.09. *Id.* Claiming a lack of organization surrounding the investigation, Mr. Coleman points to the two incident reports which he claims, "both suggest that the facts were not supported by correct CI information." *Id.* His third ground alleges there is no evidence to support the contraband belongs to him, as only the CI's

5

testimony names him the owner and "there is overwhelming evidence that inmates submit false information in order to harm another inmate." *Id.* And last, Mr. Coleman alleges the "some evidence" standard was not met. *Id.* at 8. Mr. Coleman requests this Court remove the disciplinary from his record and restore his lost good time credits. *Id.* For the reasons that follow, Mr. Coleman's claims do not warrant relief.

### A. Failure to Exhaust Administrative Remedies

"A prisoner may bring a habeas action challenging the [Bureau of Prisons]'s execution of his sentence only if he first presents his claim to the BOP." *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) (citing *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000) (per curiam)). The BOP's Administrative Remedy Program exists "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. The process is a multi-step one. First, an inmate must "present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." *Id*. at § 542.13(a). Second, if the issue is not resolved, the inmate must submit a "formal written Administrative Remedy Request" at the institutional level. *Id*. at § 542.14(a). Third, "[a]n inmate who is not satisfied with the Warden's response may submit an Appeal . . . to the appropriate Regional Director." *Id*. at § 542.15(a). Fourth, "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal . . . to the General Counsel." *Id*. An inmate may seek judicial review only after exhausting each of these steps. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)").

Mr. Coleman might think he has appealed to the General Counsel, but it seems from the

6

documentation that he did not complete every step of the Administrative Remedy Program. First, there is no mention of whether he completed the first two steps – attempting to informally resolve the issue and then submitting a formal written Administrative Remedy request at the institutional level. Next, his final appeal, whether it was to the BOP Central Office in Washington, D.C., as he claims, or to the Mid-Atlantic Region, as Respondent claims, was untimely. He had thirty days from December 3, 2021, to submit an appeal to the General Counsel in Washington, D.C. (Doc. Nos. 1 at 16, 10-14 at 3), making the appeal due by January 3, 2022. Mr. Coleman claims he filed his appeal on January 15, 2022, which is past the thirty-day time limit.[1] (Doc. No. 1 at 3). Further, his final appeal was rejected because it was not submitted in the correct region. (Doc. No. 10-14 at 3). Mr. Coleman was instructed to file his appeal in the correct region in which he was housed in order to complete the Administrative Remedy Program. *Id.* Mr. Coleman does not offer any explanation for these deficiencies, nor does he argue they should be excused. Only after he completes all the steps that the BOP holds out, and does so properly so that the BOP addresses the issue on its merits, can he seek judicial review. *Woodford*, 548 U.S. at 90. Because he failed to exhaust his administrative remedies prior to seeking judicial review in this habeas action, his Petition should be dismissed.

      **B.**      **Claims Are Meritless**

Even if Mr. Coleman had exhausted his administrative remedies, his Petition should be dismissed because his claims are meritless. In the context of prison disciplinaries, due process requires (1) advance written notice of the charges, (2) an opportunity to call witnesses and present evidence in defense, and (3) a written statement by the factfinder as to the evidence relied on and

---

[1] The Retrieval and the appeal Mr. Coleman attached both show that the appeal was received on February 22, 2022, which is also past the thirty-days. (Doc. Nos. 1 at 17; 10-14 at 3).

7

the reasons for the disciplinary action. *Wolff*, 418 U.S. at 564-66. Mr. Coleman was provided written notice of the charges on July 23, 2021, in advance of the hearing on September 7, 2021.[2] (Doc. No. 1 at 11). He waived his right to witnesses and gave a statement in his defense at the hearing. (Doc. No. 1 at 12). The DHO considered the following documents: (1) SIS Technician T. Conyers' statement in the Incident Report; (2) Contraband chain of custody; (3) Forensic Lab Report from North Carolina Crime Laboratory; (4) Senior Officer C. Nkire's memorandum; (5) Photographs of the location and contraband from the date of the search; (6) SIS Reports; and (7) the Warden UDC Extension Memos dated May 12, 2021, and June 16, 2021. *Id.* at 12-13. The DHO entered a written statement explaining all the evidence he reviewed and concluded stating:

> In deciding this issue, I considered your denial and defense, but was not swayed or convinced of your innocence. You offered no credible evidence to support your claim other than to simply say it is so and I did not find your statement believable or convincing. I have no reason to doubt T. Conyers, SIS Technician's account of the incident or Senior Officer Nkire's supporting statement. However, you have an obvious motive to be dishonest in your denial and defense, in an attempt to not be held accountable for your prohibited behavior.

*Id.* at 13.

Due process also requires that a prison disciplinary be supported by "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Determining the sufficiency of the evidence does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *Id.* Instead, the relevant question is whether there is "any evidence in the record that could support the conclusion reached" by the hearing officer. *Id.* at 455-56. "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to

---

[2] As previously explained, there was a delay in process caused by rewriting the Incident Report to add additional information and correct administrative errors. (Doc. No. 1 at 11). And authorization was received from the Warden to continue with the disciplinary process. *Id.*

base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). Mr. Coleman argues that he never had "constructive possession" or "control" over the contraband, a violation of due process from the unorganized investigation, lack of evidence, and that the "some evidence" standard was not met. *Id.* at 6-8. However, T. Conyers' report legally sufficed as "some evidence" to support Mr. Coleman's disciplinary, which is the relevant inquiry here.

### V. CONCLUSION

IT IS, THEREFORE, ORDERED that Mr. Coleman's § 2241 Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED with prejudice.

SO ORDERED this 29th day of August 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE